JACOB WOODBURN *et al.*, Appellants, v. WILLIAM RENSHAW, Respondent.

*Covenant, not running with the land.*—A covenant by the assignee of a lease, with his assignee, that the premises were free and clear of and from taxes, assessments and encumbrances, the failure to pay which exposed the lease to forfeiture, and which was broken as soon as made by the actual liability for taxes and assessment due at the date of the covenant, does not run with the land to the grantee of the second assignee by a deed conveying merely the leasehold premises.

*Assignment of right of action.*—To give the grantee in the assignment of a lease a right of action upon the broken covenants of a prior assignee, the right of action upon the breaches of the covenant must be assigned. The verbal promises of the prior assignee to the subsequent assignee to pay the sum due for the breaches of the covenant would be void for want of a consideration between the parties.

### *Appeal from St. Louis Land Court.*

This was an action upon the breach of a covenant in a lease. In April, 1847, Elizabeth Ashley rented to one Joseph S. Morrison, by indenture of lease, certain land on Broadway, in the city of St. Louis, and in the lease was the following covenant, to-wit:

"This lease may be renewed for ten years longer after the expiration hereof, provided the said lessee, or his legal representatives or assigns, shall punctually pay all the rent and taxes of every description, nature and kind which may be legally assessed on, or legally demanded of said premises, as the same shall become due, and perform all the other covenants, agreements and stipulations herein set forth."

Joseph S. Morrison went into possession under the said lease, and died in possession, in 1849, intestate. William Renshaw, Jr., the respondent, the son-in-law of Joseph S. Morrison, administered upon the estate of his father-in-law, and also purchased, in his own behalf, the interests of all other persons in the leasehold under Morrison, deceased, and went into possession of all the rights and immunities of said leasehold formerly belonging to said Morrison. Renshaw remained in possession until May, 1855, when he assigned the

remainder of the term to one Joseph La Barge, subject to the covenants of the lease.

Renshaw, during his possession, failed to pay the State and county taxes assessed for the years 1850 and 1851. The assignment from Renshaw to La Barge was as follows, to-wit:

He " assigned, transferred and set over unto one Joseph La Barge the said deed of lease from said Elizabeth Ashley, with all and singular the premises therein mentioned and described, and the buildings thereon, together with the appurtenances, to have and to hold the same unto the said Joseph La Barge, and to his heirs and assigns, from the first day of May, 1855, for and during all the rest, residue and remainder yet to come, of and in the term of years mentioned in the said indenture of lease; subject, nevertheless, to the rents, covenants, conditions and provisions therein also mentioned; the said Renshaw covenanting, granting, promising, and agreeing to and with the said Joseph La Barge that the said assigned premises now are free and clear of and from all former and other gifts, grants, bargains, sales, leases, judgments, executions, back rents, taxes, assessments, and encumbrances whatever, done or suffered by him, excepting two leases made by him to Jacob Woodburn, one dated December 15, 1853, and the other dated June 1, 1854, both of which were assigned to said La Barge."

Joseph La Barge remained in possession of the leasehold under this assignment until January, 1856, when he assigned the remainder of the term to Woodburn & Scott, the appellants, with all and singular the premises mentioned and described in the lease, and the buildings thereon, together with the appurtenances, to have and to hold unto the said Woodburn & Scott, and their heirs and assigns, from the first day of January, 1856, for and during all the rest, residue and remainder yet to come of and in the term of years mentioned in the said lease, subject, nevertheless, to the rents, covenants, conditions and provisions therein also mentioned.

At the end of the term of the leasehold, Woodburn & Scott applied to the agent of Mrs. Ashley for a renewal of the lease

according to one of its conditions, but the agent refused to renew the same because Renshaw had failed to pay the county and State taxes for the years 1850 and 1851, which, together with the damages assessed by law, amounted to $662.25. At this time, the appellants had property on the leasehold of the value of $30,000 in buildings and machinery. The property leasehold had been sold for the taxes.

The appellants informed Renshaw, respondent, of the circumstances of the non-payment of the taxes by him, and of the refusal of the agent of Mrs. Ashley to renew the lease unless the taxes and damages were paid ; whereupon he promised Woodburn & Scott to pay the taxes and damages arising thereby, but failed to do so, and appellants were finally compelled to pay the same in order to protect their property and obtain a renewal of the lease.

Woodburn & Scott sued Renshaw for $662.25, interest on the same, and costs. The case was tried by the court on the following agreed statement of facts, to-wit:

"It is agreed to submit this case to the court upon the following statement of facts : That Elizabeth Ashley leased the premises mentioned in the petition to Joseph S. Morrison, by the lease therein described, a copy of which is filed in the cause ; that defendant, after the death of Morrison, acquired by purchase, by deed of Morrison's heirs to him, of date 24th October, 1851, the entire ownership of said lease, and entered into possession of the premises ; that said defendant failed to pay the taxes assessed on said property by the county of St. Louis and State of Missouri, for the years 1850 and 1851 ; that defendant subsequently thereto, to-wit, on or about the —— day of May, 1855, assigned said property to Joseph La Barge, by the assignment filed with the petition, and made the covenant therein, and that said La Barge, under said assignment, entered into possession of the premises ; that said La Barge continued in possession until January 1, 1856, complying with all the covenants and agreements resting upon him by virtue of said lease and said assignment, at which time he executed to plaintiffs a conveyance of his right and

title in the premises, which conveyance is also on file with the petition, and put plaintiffs in possession of the said premises; that plaintiffs continued in possession of said premises, complying with all the covenants and agreements resting upon them by virtue of said lease and said assignment, until the 15th day of April, 1857, at which time they had upon said premises property to the value of at least $30,000, in buildings and machinery; that up to said 15th day of April they had remained undisturbed in their possession; that on said 15th day of April, 1857, the time limited by said lease expired, and they applied to J. T. Sweringen, attorney in fact of Mrs. Crittenden, late Mrs. Ashley, to renew said lease upon the covenants and agreements therein contained, but were refused, in consequence of the failure of defendant to pay the taxes for the years 1850 and 1851, aforesaid, and of the sale of said property for taxes in October, 1852, in consequence of such failure; that defendant was notified of such refusal, and the reason thereof stated to him, and that defendant agreed to settle and pay off the same, but failed so to do; and that plaintiffs thereupon, in order to protect their property on said premises and to obtain a renewal of said lease, paid off said taxes, with the damages thereon accrued according to law, amounting to the sum of $662.25; and that defendant administered on the *estate* of Morrison in 1849."

On this statement of facts the court found for defendant.

*R. S. Voorhis*, for appellants.

I. The terms of Renshaw's deed to La Barge raise the implied covenants of title and quiet enjoyment, both of which run with the land. The word granting has that force. (Hamilton v. Wright's Adm'r, 28 Mo. 199, and cases cited.)

The covenant of renewal runs with the land, and passed to the appellants. (1 Platt on Leases, 733; 4 Jarm. Conv. 426.) The title and possession of the premises passed from Renshaw to La Barge, and from him to the plaintiffs, and carried the implied covenants of title.

Woodburn v. Renshaw.

In contemplation of law, the covenants of Renshaw were not broken until the appellants were compelled to pay the delinquent taxes to avoid an eviction. Their possession gave them a right of action. (1 Smith's L. C. 152; Taylor, Land. & T., 291, § 445.)

II. The covenant of Morrison to pay taxes is incidental to the land and runs with it, for the covenant to pay taxes follows the covenant to pay rent. (2 Platt on Leases, 170; Norman v. Wells, 17 Wend, 136; 1 Smith's L. C. 134.) And the covenant to pay rent runs with the land and binds the assignee, though the lessee does not covenant for his assignee. (2 Platt on Leases, 163; 5 Coke, R., 16.) Renshaw *expressly* covenanted against taxes, assessments and encumbrances done or suffered by him.

The covenant to pay taxes is a real covenant, and runs with the land. (Taylor, Land. & T., 167; 2 Platt, L., 170; 4 Jarm. Cov. 425; 1 Smith's L. C., 1543; Coke, R., 25, Spencer's case; 5 Coke, R., 16.)

III. If Renshaw's covenant was broken as soon as made, still the plaintiffs can recover. (Page & Bacon v. Gardner, 20 Mo. 507.) The plaintiffs are in equity the real parties in interest. (R. C. 1855, p. 121; Vandorn v. Relfe, 20 Mo. 455.)

*Krum* and *Decker*, for respondent.

I. The plaintiffs seek to recover not for covenants broken, but for conditions unperformed. (Geary v. Reason, 3 Croke, 128; United States v. Brown, 1 Paine, C. C., 422.)

II. If there be a covenant, the covenant was made between lessee and lessor, and no action can be maintained upon it by any other than him with whom it was made, or his assigns.

The plaintiffs are not assignees of the covenant, and are strangers to the contract, and were not parties to the consideration.

III. The covenant of defendant with La Barge was a personal covenant, and if broken La Barge alone can sue for it.

A covenant against encumbrances is a personal covenant, and does not run with the land, unless the assignees are ex-

pressly named. (4 Kent, C., 471; Rawle on Cov. 380; Collier v. Gamble, 15 Mo. 470; 6 Cush. 124; 22 Pick. 493.)

To maintain an action of covenant, there must be privity of contract or privity of estate. There is no privity of contract in this case, because the covenant was with La Barge. There is no privity of estate, for as Renshaw was himself assignee, when he assigned to La Barge he ceased to have an estate.

IV. The appellants are assignees after breach, and covenant does not lie by an assignee for a breach committed before his time. (Taylor, Land. & T., 292.)

La Barge never assigned his right to sue, and may now sue upon the covenant. (Van Doren v. Relfe, 20 Mo. 455.)

V. The word "grant" in an assignment creates no covenant by assignor to assignee. (Blair v. Rankin, 11 Mo. 440; Waldo v. Hall, 14 Mass. 486; Rawle on Cov. 473, note.)

BATES, Judge, delivered the opinion of the court.

We are compelled to affirm the judgment in this case. Renshaw's covenant to La Barge that the premises were free and clear of and from taxes, assessments and encumbrances, (contained in his assignment of the lease, of which he himself was assignee of the original lessee,) and which covenant was broken as soon as made, did not pass to the plaintiff by La Barge's assignment of the lease to them, without an assignment of the covenant.

The covenant of the original lessee to pay taxes ran with the land, and while Renshaw held the land he was bound by that covenant; but that obligation was to the lessor, and the plaintiffs have no benefit of it.

The verbal promise of Renshaw, made to the plaintiffs after the assignment to them of the lease, and upon the discovery that taxes which should have been paid by him were in arrear and unpaid, that he would settle and pay off the same, however binding upon him in morals, is of no legal validity, for want of any consideration moving from the plaintiffs to him.

Judgment affirmed. Judges Bay and Dryden concur.